ALBERT IHLE et al., Executors, Plaintiffs, Appellees, v. WALTER M. IHLE et al., Defendants, Appellees, HERMAN MERICLE et al., Defendants, Appellants, LENORA I. IHLE et al., Intervenors, Appellees, MERTON IHLE et al., Intervenors, Appellees.

No. 43501.

DECEMBER 15, 1936.

O. H. Montzheimer, for plaintiffs, appellees, Albert and Charles Ihle.

Hobbet & Blue, for intervenors and appellees Merton Ihle and Goldie Lindsey.

W. A. Hamilton, for defendants, appellees, Walter and Helen Ihle.

Diamond & Jory, for defendants, appellants.

RICHARDS, J.—On January 28, 1928, Charles E. Ihle died testate. The first paragraph of his will directed the payment of debts. The second paragraph is in following words:

"I, hereby order and authorize my hereinafter named executors to sell, within a reasonable time after my death for the highest price obtainable, any and all real estate of which I may die seized and possessed or to which I may be entitled, without order of court, appraisement, sale bond or other court proceedings, it being my intention that my said executors shall have authority to execute deeds and other papers connected with the sale of said real estate as effectively as I might, if living."

In the third paragraph decedent provided that after all his property, real and personal, had been converted into money by his executors, the proceeds, remaining after payment of debts, were to be distributed by the executors to decedent's six children, each being bequeathed one-sixth of said proceeds excepting that from each of three of such shares a six-hundred-dollar advancement was to be deducted. The will then provided that the rest, residue and remainder of said proceeds were given and bequeathed, share and share alike, to the six children. Two of the children were nominated in the will as executors. This appointment was confirmed by the probate court and the two executors qualified. They are the plaintiffs herein. The petition in this

case named Walter M. Ihle, one of the six beneficiaries, and Helen Ihle, his wife, and Herman Mericle, C. Chalstrom and Primghar Savings Bank as defendants. Afterward others of the six beneficiaries appeared by petition of intervention adopting plaintiffs' petition and praying that the relief therein sought be granted. The result is that, if there be included the two executors who were also beneficiaries, all persons who have interests in the estate under the provisions of the will are parties to this action.

The petition alleged that the beneficiary Walter M. Ihle was insolvent; that he was indebted to decedent upon a three hundred dollar note; that he also is indebted to the executors for rent of a certain farm of the estate that the executors had leased to him. The relief sought by the plaintiffs was establishment of the right on their part, as executors, to withhold or deduct the amount of these debts from the portion of the proceeds of the sale of the property of the estate payable to Walter as a beneficiary. The trial court decreed that such deduction should be made, and with priority over any payment to appellant Primghar Savings Bank upon its claim against Walter M. Ihle. Therefrom the bank has appealed.

The claim against Walter on which appellant in argument relies, consists of a promissory note and mortgage given by Walter to Herman Mericle and C. Chalstrom, appellants, and by them assigned to the bank. It was the bank's money that was involved and appellants Mericle and Chalstrom make no contention that they had any remaining interests after making the assignment.. The mortgage was executed on April 29, 1931. It conveys "Our one-sixth interest in North Half of South East Quarter of Section Eighteen (18) Township Ninety Four (94) North of Range Forty One (41) O'Brien County, Iowa, * * *," and in another described tract in that county. The mortgage was given as security additional to a chattel mortgage for the same amount payable to the bank.

It is conceded that the three-hundred-dollar note that Walter owed the testator should be deducted in the manner that was decreed. Appellant's contention pertains to only the indebtedness for rent. The claim made by appellant bank is that the executors had no right of retainer or deduction therefor, because such debt was not an estate indebtedness, but was simply an indebtedness owing from one to other tenants in common. Were said retainer or deduction not made, a larger amount would

have been payable upon the bank's claim under the terms of the decree.

Appellant bank concedes that the terms of the will worked an equitable conversion of the land of decedent into personalty upon the death of the testator. Under the prior holdings of this court the necessity of such conclusion is quite patent, without need of discussion. But appellant would distinguish between such constructive conversion occurring at the time of decedent's death, and what appellant terms actual conversion of the land into money by a sale and conveyance by the executors, and mention is made of the obvious fact that between the constructive and the so-called actual conversion there is an intervening period of time. Concerning such period appellant says that "in that interregnum of time the absolute fee by operation of law vested in the heirs as tenants in common by right of descent, carrying with it the rights of the tenants in common to occupy the land, * * *." Appellant claims that the right of occupancy during said intervening period being a matter of rights between co-tenants, it is not an asset belonging to the estate as such and is not an asset with which the executors are in any way concerned. Appellant's deduction is that said indebtedness for rent was not an indebtedness to the estate that could be deducted by the executors, because it was simply a debt from one tenant in common to other tenants in common growing out of the occupancy by Walter of the real estate owned during such intervening period by all of the heirs as tenants in common.

Appellant cites cases from several jurisdictions in support of the proposition that, where a power of sale of land is given by a will, the land descends interim to the heirs at law until a sale is made by the executors in pursuance to their power. But there are likewise authorities that whether the devise be to the executors to sell the land, or that the executors shall sell, or that the land shall be sold by the executors, a fee simple will be vested in the executors. A review of these cases in other jurisdictions is not attempted, because in Iowa the question is already definitely settled.

In Beaver v. Ross, 140 Iowa 154, 158, 159, 118 N. W. 287, 289, 20 L. R. A. (N. S.) 65, 17 Ann. Cas. 640, after discussing this conflict in the authorities regarding the time when the conversion takes place, this court reached the conclusion that:

"The great weight of authority is in favor of the proposition that the conversion takes place at the instant of testator's death, and that all property rights must be determined as if the conversion had taken place at that time, and the rights of the parties are adjusted as if the property were personalty. In cases where the doctrine applies either by reason of the act of the parties or by operation of law, the proceeds are regarded as personal property. In other words, this interest passes as personalty, and the legatees have no such estate in the land as is subject to a judgment or lien or to an execution for the sale of real estate."

In the Beaver case it was argued that the doctrine of equitable conversion did not apply because by the terms of the will in that case no title passed to the executor or other trustees. But it was the conclusion of the court that "It was quite generally held that there need be no devise in terms to testator's executors, or to trustees in order that the doctrine of equitable conversion may apply. [Citing cases.] And the fact that the sale is postponed to a time subsequent to the death of the testator is not controlling." The rule stated in the Beaver case is cited in Shillinglaw v. Peterson, 184 Iowa 276, 167 N. W. 709.

In In re Mount's Est., 189 Iowa 279, 283, 178 N. W. 391, 393, it is said:

"An imperative and absolute direction in a will that land be sold, and the proceeds thereof distributed, works an equitable conversion of the land into personalty, as of the date of the death of the testator. Inghram v. Chandler, 179 Iowa 304, 161 N. W. 434, L. R. A. 1917D, 713, and cases cited therein."

Thus it is apparent that the rule for which appellant contends is not recognized in this jurisdiction. The rule in Iowa is that all property rights must be determined as if the conversion had taken place at the instant of the testator's death. Quite irreconcilable therewith is appellant's contention in this case that during the interval between testator's death and the actual sale of the land by the executors the beneficiaries were vested with an absolute title of inheritance rendering the possession of Walter that of an owner in common, accountable only to the other alleged co-owners. There was in this case no re-conversion by all the beneficiaries of the personalty into real estate, nor does

appellant rely on any claim of re-conversion in support of its position.

The trial court decreed that appellant's mortgage created no lien upon the real estate therein described. But it made a further finding that subject to the rights of retainer by the executors the mortgage created upon Walter's share of the estate an equitable lien in favor of the bank. The court directed payment to the bank, on account of such equitable lien, of any portion of Walter's share remaining after the deductions by the executors. No appeal was taken therefrom by any of the appellees. One of appellant's complaints is that the court erred in refusing to hold that appellant's such equitable lien is superior to any rights of retention allowed to the executors. Appellant states this proposition broadly, and we find no argument thereon by appellant, excepting the point made by appellant as already discussed. However it may be said that appellant's note and mortgage was not executed until about eight months subsequent to the leasing of the lands, and not until about two months after Walter had begun farming the land as the tenant of the executors. Regardless of other questions, the executors had assumed to rent the land and it had become their responsibility to account for the rent, as part of the assets of the estate. In re Holderbaum, 82 Iowa 69, 47 N. W. 898. The mortgagees so knew when they took the mortgage. Obviously whatever equitable lien the bank may have acquired was subsequent in point of time and inferior to the already existing equitable right of the executors, upon distributing to Walter, to deduct unpaid rentals, which were funds that had become a part of the assets of the estate. We find no error. Motion to strike reply argument overruled. —Affirmed.

PARSONS, C. J., and ANDERSON, DONEGAN, and ALBERT, JJ., concur.