Bernice Seeley, appellee, v. Alpheus Heise Seeley et al., appellants.

No. 47757.

(Reported in 45 N.W.2d 881)

FEBRUARY 6, 1951.

Senneff & Buck, of Britt, for appellants other than defendant-minor and guardian.

E. C. McMahon and Hutchison & Hutchison, all of Algona, for appellee.

Leo J. Cassel, of Algona, for guardian-cross-appellant.

SMITH, J.—Nancy Emma Seeley died, a resident of Algona, Iowa, on July 4, 1934. Her husband had predeceased her. She left two sons, her only heirs, Frank B. Seeley (then fifty-one) and Burton A. Seeley (forty-eight). She left a will, dated June 16, 1934, giving the residence property in Algona to Frank and all the rest of her property in equal shares to her two sons, and revoking all former wills.

Both sons were married. Plaintiff was the wife of Frank, and defendant Joan Kathryn Seeley is their only child. Burton and wife, Minna, have two children, Alpheus Heisey Seeley and Nana Bigelow Seeley (now Gilmer). All are defendants herein together with the spouses of Alpheus and Nana and the guardian of Joan Kathryn.

Nancy Seeley had executed another will ten days earlier (June 6, 1934) giving the property to her three grandchildren, subject to life estates in her sons, Frank and Burton.

Both instruments were filed with the clerk of the court, but neither was admitted to probate. On July 10, 1934, Frank and Burton entered into a written contract in the nature of a family settlement, in which they referred only to the later will, refused to accept under it and united in asking the court to deny probate and to order the fee title of all real estate to go to the three grandchildren in equal shares, subject to a life estate in Frank, who agreed to pay taxes and upkeep. The wives did not sign this contract. The evidence indicates the purpose of the contract was to furnish adequate income to Frank for life as he was in poor health.

On the brothers' application the probate court entered an order denying probate of the will, approving the agreement and providing that it be strictly followed in the distribution and division of the assets of the estate. Administration was had. Frank first served as special administrator and later letters issued to Burton on the application of both. Burton administered the estate as intestate and was discharged in December 1935. No probate notices were served on anyone but Frank and Burton.

At the time of Nancy Seeley's death and for some time prior thereto Frank and his family (wife and daughter) lived with her. They thereafter continued to live in the Algona home for approximately two years, later residing in Texas and Florida. During all the time after his mother's death and until his own, on September 26, 1948, Frank had the use and income of both farm and city property. Nevertheless he did not always pay taxes or keep the premises in very good repair and Burton contributed substantial amounts to that end.

After Frank's death his widow commenced this partition proceeding, claiming her one-third distributive share or dower in all the real estate, which interest she claims never to have released.

I. Defendants Burton and wife and children (hereinafter for convenience referred to merely as defendants) deny that any title other than life estate ever vested in Frank and by the same token they deny plaintiff ever had any dower right or has any interest in the real estate now.

The trial court overruled this contention, holding the contract or family settlement was valid; that it constituted a renunciation by the sons of any claim under the will; that thereupon title vested in the two sons as only heirs of their mother, and their wives became possessed of inchoate dower rights; that the contract also operated as a conveyance and plaintiff, not having relinquished her dower, is now the owner of one third of her husband's one-half interest or one sixth. The defendants appeal from this part of the decree. Their appeal demands a determination as to the legal situation created by the sons' contract, withholding their mother's will from probate and directing devolution to her grandchildren.

II. We do not understand any attack is made here on the validity of the contract though some argument is offered in its defense. There can be no question of the right of a beneficiary to renounce a devise or legacy made for his benefit. Mohn v. Mohn, 148 Iowa 288, 126 N.W. 1127. And such renunciation takes effect as of testator's death, even as against judgment creditors of the devisee. Schoonover v. Osborne, 193 Iowa 474, 187 N.W. 20, 27 A. L. R. 465; Lehr v. Switzer, 213 Iowa 658, 239 N.W. 564; Funk v. Grulke, 204 Iowa 314, 213 N.W. 608.

It does not ordinarily constitute an assignment. Coomes v. Finegan, 233 Iowa 448, 7 N.W.2d 729; Myers v. Smith, 235 Iowa 385, 16 N.W.2d 628, 155 A. L. R. 1413. The renounced gift is not subject to inheritance tax. In re Estate of Stone, 132 Iowa 136, 109 N.W. 455, 10 Ann. Cas. 1033; In re Estate of Wells, 142 Iowa 255, 120 N.W. 713.

Nor is there any doubt of the right of the beneficiaries to join in withholding the instrument from probate, and if they are also all the heirs they may by contract direct distribution of assets and devolution of title contrary both to the provisions of the will and the laws of descent. In re Estate of Murphy, 217 Iowa 1291, 252 N.W. 523; Douglas v. Albrecht, 130 Iowa 132, 106 N.W. 354.

This right to control the direction or distribution when will is not probated is not in the beneficiaries as such but in the heirs. A renounced gift, if the will is probated, passes under the residuary clause if there be one, otherwise it becomes intestate property. Myers v. Smith, supra. However, when will is probated the beneficiaries may agree to distribution in manner different from provisions of will. In re Estate of Conner, 240 Iowa 479, 488, 36 N.W.2d 833. And if all beneficiaries renounce and will is not probated the whole estate of course passes as intestate. In such case the family settlement can only be made by heirs.

This is not in essential disagreement with the decision in In re Estate of Swanson, 239 Iowa 294, 297, 31 N.W.2d 385, 387. While the agreement in that case was among beneficiaries under an unprobated will, they were also the widow and heirs of decedent. The foreword refers to the agreement as "a settlement agreement among the heirs," and the opinion clearly states the "widow and heirs filed resistance * * * in which they set up an agreement that day signed by them providing for settlement of the estate as intestate * * *." It is apparent that in that case no thought was given as to whether the parties who entered into the agreement were doing so as beneficiaries or as heirs. All interested parties were represented and the agreement was upheld.

We need not speculate upon or determine whether a devisee can, by renunciation, defeat his wife's right of dower in

absence of some relinquishment by her. The brothers here never became devisees but remained heirs. It is certain an heir cannot renounce his right as such to take title. That is the one situation in which one cannot refuse title. Coomes v. Finegan, 233 Iowa 448, 7 N.W.2d 729.

III. Defendants argue the contract here was not a renunciation of the will "but rather a modification thereof by which the beneficiaries mutually agreed in what manner they should take." They say further that "title never vested in Frank B. Seeley under either the will or by the rules of descent; * * * the title became fixed by the contract, and plaintiff never acquired any inchoate interest because Frank B. Seeley never acquired any interest in the title."

This states the heart of defendants' case against plaintiff's claim of dower. They are logically driven to this position. Its unsoundness seems to us apparent. The sons were not "beneficiaries." They acquired no interest under the will. It never took effect because never probated. That is defendants' own first "proposition" and it is of course sound. Section 633.38 Iowa Code, 1950. If they also acquired no interest or title by the statutes of descent by what authority or under what theory could they control or direct the devolution of title? Neither they nor anyone else could make or modify decedent's will.

The theory of family settlements of this character is sound if it be assumed the contracting parties are all the owners of the property either as beneficiaries under the will, if it be admitted to probate, or otherwise as heirs. The contracting parties do not determine to whom the title passes *from decedent*. That can be done only by will or by the statutes of descent.

In legal effect the contracting parties convey title *from themselves* without resorting to the usual instruments of conveyance. The probate court shapes the administration so as to carry out the contract but by no theory or fiction of law does the title by-pass the heirs or beneficiaries and pass direct from decedent to those designated by the contract. It is instead accurate to say the probate court implements the contract instead of such implementing being done by formal conveyance.

IV. Our conclusion on this branch of the case is that Frank and Burton as heirs became the owners of the real estate

in equal shares upon their mother's death; that this ownership of legal title was not changed, since the will was not probated; that they could and did as heirs legally consummate a transfer of title to decedent's grandchildren, subject to the reserved life estate in Frank and subject by statute to the inchoate rights of their spouses who did not join in the contract. Section 636.5, Iowa Code, 1950.

We do not inquire into any complication that might be conceived as to possible rights under the earlier will since all beneficiaries therein have acquiesced in the failure to present same for probate and are parties to the instant litigation, making no claim except under the contract.

Plaintiff's interest is not subject to any debts of her husband and the claims growing out of his alleged failure to pay taxes and upkeep. Nor could any debt or claim arise even against Frank or his estate, if he left any, by reason of his collection of rentals during his lifetime. He owned the life estate by virtue of the contract, the legality of which is unchallenged. As such owner the rentals were his.

V. Some claim is made that plaintiff's interest has been lost by estoppel or waiver by reason of her conduct with knowledge of the contract. This contention is untenable. She could not then, nor does she now, question the validity of the contract by which her husband retained only a life estate in the property. She merely claims her dower, since she did not relinquish it. She was under no legal duty to speak. The fact that the ownership of other defendants was subject to her inchoate right was open and unconcealed. It did not arise from or depend on the contract.

There is no showing that anyone relied upon or was misled by her silence. Her right was not acquired by inheritance or conveyance from her husband but was created by statute and is protected by statute.

This claim of estoppel is completely answered in Hyatt v. O'Connell, 130 Iowa 567, 569, 107 N.W. 599, 3 L. R. A., N. S., 971, 973, where under facts analogous to those shown here it is said:

"It is urged that plaintiff allowed her husband to use the proceeds of the land in the support of the plaintiff as a member

of his family, and that this estops her from asserting an adverse claim; but there is no merit in this contention. She was not required to leave her husband and refuse to receive support from him because he sold the land without her consent."

Plaintiff here acted promptly upon her husband's death. The court correctly held she owned an undivided one-sixth interest in the real estate involved, free from any claim that might be urged against her husband's estate.

VI. The trial court held the one-third interest of Joan Kathryn Seeley, minor-defendant, subject to the claim and lien of Burton for money advanced Frank for repairs and taxes. No theory is stated by the court upon which this part of the decree is based. The guardian of the minor appeals, contending no such relief was asked for in the pleadings or justified by the facts.

Defendants respond that their cross-petition prayed for equitable relief and in various places averred that Frank and his family "enjoyed the fruits and benefits of the real estate" from July 4, 1934, until his death. They disclaim any contention that the advances constituted a debt of Frank Seeley. They argue the advances were for the benefit of the Frank Seeley family of which Joan was one. They say that because Frank was bound to keep the premises in repair and failed to do so, his minor daughter's remainder interest should be impressed with a lien.

In another division they argue Joan, as a cotenant, was liable for the amounts advanced by Burton necessary to keep the premises in a state of repair. But she was not a cotenant in her father's life estate. Her interest was in the remainder as tenant in common with the other grandchildren. We find no merit in any of the theories advanced in support of this part of the trial court's decree.

Neither the minor nor her remainder interest can be made liable for her father's failure to perform his duty as life tenant. We know of no rule of equity justifying such a result and no authority is cited to support it.

There is no occasion for passing on the question of pleading urged on behalf of the minor or the contention that some of the

228

items were barred by the statute of limitations, since we hold her interest was never liable.

We think the decree of the trial court must be reversed on the cross-appeal.—Affirmed on defendants' appeal; reversed on cross-appeal on behalf of minor-defendant Joan Kathryn Seeley.

WENNERSTRUM, C. J., and OLIVER, MULRONEY, GARFIELD, and HAYS, JJ., concur.

BLISS, J., takes no part.

MANTZ, J., not sitting.